UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY L. CINGOLANI,

    Plaintiff,

v.

BAC HOME LOANS SERVICING, L.P., a
foreign limited partnership, BAC GP, LLC,
a foreign limited liability company, BANK
OF AMERICA, N.A., a foreign corporation,
FIRST NATIONAL BANK OF ARIZONA,
a foreign corporation, FIRST NATIONAL
BANK OF NEVADA, a foreign corporation,
MUTUAL OF OMAHA BANK, a foreign
corporation, and TROTT & TROTT, a
professional corporation,

    Defendants.
_____/

Case No. 11-15159

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_July 25, 2012.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

In this action, Nancy Cingolani ("Plaintiff") asserts that the above-listed defendants violated state and federal law in connection with the foreclosure of a mortgage. Presently before the Court is a motion to dismiss, or alternatively, for summary judgment, filed by Defendant Trott & Trott, P.C. ("Trott") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. Plaintiff has not filed a response to the motion. The Court scheduled a

hearing for July 24, 2012, but Plaintiff's counsel failed to appear. Trott's counsel agreed that the Court could decide the case based on the pleadings.

## I. Factual and Procedural Background

On June 1, 2005, Plaintiff refinanced a loan with First National Bank of Arizona. As security for the loan, Plaintiff executed a mortgage on a home located in Farmington Hills, Michigan. The mortgagee was Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for the lender and the lender's successors and assigns. Plaintiff's loan was later transferred to another lender and was serviced by BAC Home Loans Servicing, L.P.

Plaintiff eventually defaulted on the loan, and the lender sought to foreclose on the mortgage. MERS assigned the mortgage to Bank of America, N.A. ("Bank of America"), and Bank of America retained Trott for the purpose of instituting foreclosure proceedings.[1] A sheriff's sale was scheduled for June 3, 2008, and Trott arranged for the publishing of notices of foreclosure. *See* Trott Br. Ex. D. According to Trott, the sheriff's sale was held that day and Bank of America was the only bidder. Before the sale, however, the Register of Deeds had informed Trott of an error in the legal description of the property. Bank of America therefore never recorded the sheriff's deed.

Plaintiff alleges that during a phone call to Trott on November 24, 2008, she was told that the property had been sold at a sheriff's sale. Compl. ¶ 26. Plaintiff alleges that she was told that "she was in the process of being evicted." *Id.* ¶ 27. Plaintiff further asserts that on account of the sheriff's sale and eviction proceeding, she "was forced to vacate the

---

[1] Bank of America is the successor-by-merger to BAC Home Loans Servicing, L.P.

Property, enter into a lease agreement for alternate housing, and relocate her household to this new location." *Id.* ¶ 30. Trott claims that Plaintiff left the home voluntarily and that no eviction proceedings were ever instituted against her in any court. Trott Br. 1. Trott asserts that Bank of America and Plaintiff had some discussions about a "home retention program" in late 2009 or early 2010, but no further action was taken at the time.

Because the first sheriff's deed was never recorded, Bank of America referred the mortgage to Trott again in June 2009 for foreclosure proceedings. Trott again arranged for posting of a notice at the property and publication of notices of the sale. *See* Trott Br. Ex. F. These notices were also mailed to Plaintiff's new address, as she was no longer living in the Farmington Hills home. *See* Trott Br. Ex. H. The sale was adjourned a number of times, and in the meantime, Bank of America and Plaintiff attempted to work out an acceptable arrangement. Although the parties continued these discussions until late 2010, these efforts were apparently unsuccessful. The sheriff's sale has not yet been held.

In March 2011, Plaintiff contacted Trott and inquired about the June 2008 sheriff's sale. It also appears that at about this time, Plaintiff requested a reinstatement quote from Trott. Trott sent the requested information to Plaintiff. *See* Trott Br. Ex. E.

Plaintiff filed this action in the Eastern District of Michigan on November 22, 2011. The Complaint asserts the following claims: "Fair Debt Collection Practices Act" (Count I); "TILA Violations" (Count II); "Breach of Contract" (Count III); "Negligence" (Count IV); "Fraud" (Count V); "Tortious Interference With Contractual Relations and Business Expectancies" (Count VI); "Intentional Infliction of Emotional Distress" (Count VII); "Civil Conspiracy" (Count VIII); "Declaratory Judgment" (Count IX); and "Quiet Title"

3

(Count X). On March 13, 2012, Plaintiff voluntarily dismissed her claims against Bank of America, BAC GP, LLC, and BAC Home Loans Servicing, L.P. On May 17, 2012, the Court dismissed the claims against First National Bank of Arizona, First National Bank of Nevada, and Mutual of Omaha because Plaintiff failed to serve those defendants within 120 days of filing the Complaint. *See* Dkt. #19. Trott, the only remaining defendant in this suit, has now filed a motion to dismiss, or in the alternative, for summary judgment.

## II. Standard of Review

The Court notes that although Trott's motion is filed pursuant to Rules 12(b)(6) and 56, it refers to matters outside the pleadings, and is therefore properly treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Because the motion was also filed under Rule 56, the Court believes that Plaintiff has reasonable notice that Trott's motion will be evaluated using the summary judgment standard.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of

4

material fact." *Id*. at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III. Discussion

**A. Fair Debt Collection Practices Act**

Plaintiff alleges that "Defendants" violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by making false representations concerning the debt owed by Plaintiff, the sheriff's sale, and Plaintiff's eviction. Compl. ¶ 40. Trott argues that Plaintiff has failed to present any facts or evidence suggesting that its representations were false. Trott Br. 18-19. The Court agrees. The basis for Plaintiff's claim is her belief that First National Bank of Arizona failed to properly assign the loan and mortgage to the remaining defendants. She therefore concludes that the defendants were not entitled to collect on the loan or enforce the security interest established by the mortgage. Compl. ¶

5

14-19. Plaintiff lacks standing to assert this challenge, as she was not a party to the assignments at issue. *See Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) (internal quotation marks omitted). Trott has also presented the assignment of the mortgage from MERS to Bank of America, and this assignment was recorded with the Register of Deeds on October 12, 2011. *See* Trott Br. Ex. C. The Complaint further suggests that the note and mortgage are invalid because of the "misrepresentations" and "deceptive practices" of First National Bank of Arizona and the mortgage broker in this transaction, Amerifirst Mortgage. Compl. ¶ 20. Plaintiff has failed to present any evidence of deceptive practices. Because there is no basis for invalidating the debt or mortgage, the Court concludes that Plaintiff has failed to establish that Trott's representations concerning the debt were false. Plaintiff has also failed to introduce any evidence of false statements with respect to the sheriff's sale or eviction proceedings. Trott asserts that the sheriff's sale was held on June 3, 2008, even though the deed was not recorded. There is no evidence before the Court contradicting this assertion. Accordingly, the Court concludes that Trott should be granted summary judgment with respect to the FDCPA claim.

### B. Truth in Lending Act

In Count II, Plaintiff asserts that Trott violated the Truth in Lending Act, 15 U.S.C. § 1641(g), by failing to notify her of the assignment of the loan and mortgage. *See* Compl. ¶¶ 43-44. Trott argues that it cannot be held liable under this statute because § 1641(g) applies to "creditor[s]." The statute provides:

> In addition to other disclosures required by this title, not later than 30 days after

>the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, *the creditor that is the new owner or assignee of the debt* shall notify the borrower in writing of such transfer . . . .

15 U.S.C. § 1641(g) (emphasis added). The statute defines "creditor" as the person to whom the debt arising from the transaction is payable. *See* 15 U.S.C. § 1602(g). There is no evidence indicating that Plaintiff's loan was payable to Trott, or that Trott obtained ownership of the debt or claimed such ownership. In fact, the reinstatement letter sent to Plaintiff in April 2011 specifically instructed her that any check should be made payable to "BAC Home Loans Servicing, L.P." *See* Trott Br. Ex. E. Trott merely represented the creditor in attempting to exercise the creditor's rights to the collateral.

Even if Plaintiff had set forth evidence indicating that Trott was a "creditor" bound by the requirements of § 1641(g), the Court agrees with Trott that the Truth in Lending Act claim is time-barred. Truth in Lending Act claims must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Plaintiff alleges that the loan and mortgage were improperly assigned in 2007. Compl. ¶ 13. Thus, her claim was brought more than three years after the alleged violation. Although Truth in Lending Act claims are subject to equitable tolling, *see Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984), tolling is not justified by the facts of this case. A statute of limitations may generally be tolled if the plaintiff shows that: (1) the defendant actively concealed its misconduct; (2) this concealment prevented the plaintiff from discovering the misconduct during the limitations period; and (3) the plaintiff exercised diligence in attempting to uncover the misconduct. *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010). There is no evidence indicating that Trott attempted to

conceal the assignment of the note and mortgage.  Nor is there any indication that Plaintiff acted diligently to discover her claim.  Plaintiff had numerous contacts with Trott between 2008 and 2011, and it is unclear why she could not have learned that the original lender, First National Bank of Arizona, no longer held the loan and mortgage.  Plaintiff alleges that Bank of America contacted her about the loan in November 2008, claiming that it was owed this debt.  *See* Compl. ¶ 17.  Surely this would have put Plaintiff on notice of the assignment.  "The party seeking equitable tolling bears the burden of proving he is entitled to it."  *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citing *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).  The Court finds no grounds for equitably tolling the limitations period, and concludes that the Truth in Lending Act claim is time-barred.

**C. Breach of Contract**

Plaintiff asserts that Trott breached a contractual duty to her arising from either the loan or mortgage.  Trott allegedly misrepresented that a sheriff's sale had occurred and that an eviction was in progress.  *See* Compl. ¶¶ 47-48.  Plaintiff also claims that Trott breached a duty "to maintain the [p]roperty."  *Id.* ¶ 48.  Trott argues that it was not a party to any of the contracts at issue.  Under Michigan law, a plaintiff alleging breach of contract must show that a contract existed between the parties.  *Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F. Supp. 2d 815, 818 (E.D. Mich. 2007).  The loan agreement was a contract between Plaintiff and First National Bank of Arizona, Compl. ¶ 12, and the same is true of the mortgage.  *See* Trott Br. Ex. B.  Because Trott was not a party to either the loan agreement or the mortgage, the Court concludes that Plaintiff has failed to establish a genuine dispute of fact with respect to her breach of contract claim.

8

**D. Negligence**

In Count IV, Plaintiff asserts that Trott breached a duty of care owed to her by failing to maintain the property and by making misrepresentations about the sheriff's sale and an eviction. Compl. ¶ 52. Trott contends that this claim fails because under Michigan law, it only owed a duty of care to its client, Bank of America.

"Only if the law recognizes a duty to act with due care arising from the relationship of the parties does it subject the defendant to liability for negligent conduct." *Friedman v. Dozorc*, 412 Mich. 1, 22, 312 N.W.2d 585, 591 (Mich. 1981). "Assuming that an attorney has an obligation to his client to conduct a reasonable investigation prior to bringing an action, that obligation is not the functional equivalent of a duty of care owed to the client's adversary." *Id.* at 22-23, 312 N.W.2d at 591. "[C]ourts have been reluctant to allow actions by third parties against attorneys, who were engaged in the representation of their clients, because of 'the potential for conflicts of interest that could seriously undermine counsel's duty of loyalty to the client.'" *Edwards v. Std. Fed. Bank, N.A.*, No. 08-12146, 2009 U.S. Dist. LEXIS 2590, at *11 (E.D. Mich. Jan. 14, 2009) (quoting *Beaty v. Hertzberg & Golden, P.C.*, 456 Mich. 247, 254, 571 N.W.2d 716, 720 (Mich. 1997)). Trott represented Bank of America in the foreclosure proceedings, and this representation could certainly be considered adverse to Plaintiff's interests. The Court concludes that Trott owed no duty of care to Plaintiff, and thus, her negligence claim fails.[2]

---

[2] An exception to the general rule has been recognized where a special relationship exists between the attorney and the third party. *See Beaty*, 456 Mich. at 254, 571 N.W.2d at 720 (special relationship between insurer, the insured, and the insured's counsel is sufficient to establish a duty of care). The facts in this case, however, do not indicate any special

9

**E. Fraud**

Plaintiff contends that Trott's representations to her regarding the debt owed, the sheriff's sale, and the existence of eviction proceedings constituted fraud. Compl. ¶ 55. Under Michigan law, a fraud claim requires the plaintiff to prove the following: (1) that the defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intent that the plaintiff rely upon it; (5) that plaintiff relied upon it; and (6) that the plaintiff suffered injury. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (Mich. 1976). Trott argues that Plaintiff's claim fails because the alleged representations were correct. Trott Br. 18-19. The Court has already considered these allegations in the context of Plaintiff's FDCPA claim, and found no evidence suggesting that Trott's representations were false. Trott also notes that an inquiry into public records would have enabled Plaintiff to determine that the sheriff's deed was not recorded and that eviction proceedings were not pending. "'There is no fraud where means of knowledge are open to the plaintiff and the degree of their utilization is circumscribed in no respect by defendant.'" *Aron Alan, LLC v. Tanfran, Inc.*, 240 F. App'x 678, 682 (6th Cir. 2007) (quoting *Webb v. First of Mich. Corp.*, 195 Mich. App. 470, 474, 491 N.W.2d 851, 853 (Mich. Ct. App. 1992)). For these reasons, Trott should be granted summary judgment with respect to the fraud claim.

**F. Tortious Interference**

---

relationship between Plaintiff and Trott.

10

In Count VI, Plaintiff asserts that Trott tortiously interfered with her contractual rights and business expectancies concerning the loan and the property. Compl. ¶¶ 60-62. "Under Michigan law, tortious interference with contract requires '(1) a contract; (2) a breach; and (3) instigation of the breach without justification by the defendant.'" *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 800 (6th Cir. 2007) (quoting *Tata Consultancy Servs. v. Sys. Int'l Inc.*, 31 F.3d 416, 422 (6th Cir. 1994)). The Court is unaware of any evidence suggesting that Trott caused Plaintiff's breach of the loan agreement. Instead, it appears that Bank of America engaged Trott's services after Plaintiff defaulted on the loan. *See, e.g.*, Trott Br. Ex. G.

To the extent that Plaintiff claims tortious interference with a business expectancy, her claim also fails. Under Michigan law, a claim of tortious interference with business relationship requires:

> (1) a valid business relationship or expectancy; (2) knowledge of that relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship or expectancy; and (4) resulting damage to the plaintiff.

*Warrior Sports, Inc. v. NCAA*, 623 F.3d 281, 286 (6th Cir. 2010) (citing *Via The Web Designs, L.L.C. v. Beauticontrol Cosmetics, Inc.*, 148 F. App'x 483, 487 (6th Cir. 2005)). "'The third element of this tort requires the plaintiff to demonstrate . . . an intentional act that is either (1) wrongful per se; or (2) lawful, but done with malice and unjustified in law.'" *Id.* (quoting *Via The Web Designs*, 148 F. App'x at 487). Although Trott's actions in instituting foreclosure proceedings may have interfered with Plaintiff's property rights, the interference was not wrongful. Plaintiff's mortgage specifically granted a power of

11

sale that enabled the lender to foreclose in the event of default. *See* Trott Br. Ex. B at 13. It is undisputed that Plaintiff did not make the scheduled loan payments; thus, Trott did not act wrongfully in exercising remedies on behalf of the lender. The Court concludes that Plaintiff has failed to establish a genuine dispute of material fact with respect to this claim.

**G. Intentional Infliction of Emotional Distress**

In Count VII, Plaintiff asserts that Trott's conduct in this matter was sufficient to give rise to a claim of intentional infliction of emotional distress. Compl. ¶¶ 65-70. The Court disagrees. This tort requires Plaintiff to present evidence of: "(1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Walsh v. Taylor*, 263 Mich. App. 618, 634, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004). "'Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* at 634, 689 N.W.2d at 517 (quoting *Lewis v LeGrow*, 258 Mich. App. 175, 196, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003)). "In Michigan, this standard is not satisfied when the plaintiff essentially claims that the defendant 'breached contracts with him in various ways and foreclosed on his property.'" *Chungag v. Wells Fargo Bank, N.A.*, No. 11-1353, 2012 U.S. App. LEXIS 12500, at *11 (6th Cir. June 19, 2012) (quoting *Ursery v. Option One Mortg. Corp.*, No. 271560, 2007 Mich. App. LEXIS 1861, at *48-49 (Mich. Ct. App. July 31, 2007)). The Court therefore concludes that Trott must be granted summary judgment on this claim.

**H. Civil Conspiracy**

Plaintiff has also brought a civil conspiracy claim against Trott. *See* Compl. ¶¶ 72-75. Trott correctly notes, however, that "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Early Detection Ctr., P.C. v. New York Life Ins. Co.*, 157 Mich. App. 618, 632, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986). Because the Court has concluded that Plaintiff has failed to establish a genuine dispute of material fact with respect to her other tort claims, the civil conspiracy claim must also fail.

**I. Declaratory Judgment and Quiet Title**

Plaintiff seeks to quiet title to the property, as well as a declaration that title to the property is vested in Plaintiff alone. *See* Compl. ¶¶ 80-81. Michigan law provides that "[a]ny person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action . . . against any other person who claims . . . [an inconsistent interest.]" Michigan Compiled Laws § 600.2932(1). Trott does not claim any interest in the property, and contends that there still has not been a valid sheriff's sale. Trott Br. 19. Plaintiff has not demonstrated grounds for voiding the mortgage on the property. She therefore owns the property subject to the mortgage. Plaintiff is not entitled to relief on her claim to quiet title. For the same reason, declaratory relief is also denied.

### IV. Conclusion

The Court concludes that no genuine dispute of material fact exists with respect to the claims raised by Plaintiff in this action.

Accordingly,

**IT IS ORDERED** that Trott & Trott, P.C.'s motion for summary judgment is

**GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Paul J. Dillon, Esq.
Richard Welke, Esq.